Victor J. Kisch, OSB No. 941038
victor.kisch@stoel.com
John B. Dudrey, OSB No. 083085
john.dudrey@stoel.com
STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, OR 97205
Telephone: (503) 224-3380
Facsimile: (503) 220-2480

Attorneys for Defendant

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| DOUG TILSON and DIANNA WILLIAMS, | Case No.: 3:19-cv-108-SI |
| Plaintiffs, | |
| v. | DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT |
| TRI-COUNTY METROPOLITAN TRANSPORTATION DISTRICT OF OREGON, | |
| Defendant. | ORAL ARGUMENT REQUESTED |

**LOCAL RULE 7-1(A) COMPLIANCE**

Pursuant to L.R. 7-1(a), counsel for Tri-County Metropolitan Transportation District of Oregon ("TriMet" or "Defendant") certify that they conferred in good faith with Plaintiffs' counsel regarding this Motion, and the matters contained therein, but the parties were unable to agree.

Page   1   -   DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND
              MEMORANDUM IN SUPPORT

**MOTION**

Pursuant to Fed. R. Civ. P. 56, TriMet moves for an order granting it summary judgment against Plaintiffs' claims. There is no genuine issue as to any material fact and TriMet is entitled to judgment as a matter of law. This Motion is supported by the Memorandum below, the Corrected Stipulated Statement of Material Facts ("Stip. Facts") filed by the parties on May 29, 2019 (Dkt. No. 17), and the other pleadings on file in this action.

**MEMORANDUM**

**I.     INTRODUCTION**

The Fair Labor Standards Act ("FLSA") leaves very few decisions to the discretion of the employer and the employee. For example, an employer and an employee generally cannot agree that the employee will earn less than the federal minimum wage, no matter the objective reasonableness of the employer's justifications or the sincerity of the employee's willingness to work for less than $7.25 per hour. This is because the FLSA is an employee-protection statute whose very purpose is to establish a baseline set of wage-related rules.

This case requires that the Court determine the scope of one of the limited number of subjects over which the FLSA allows the employer and the employee some measure of control: which payments must be included in the regular rate of pay for purposes of determining the amount of employees' overtime payments. TriMet and the labor union that represents its light-rail operators, Amalgamated Transit Union, Division 757 ("ATU"), agreed almost two decades ago that so-called "rail-allowance" payments made to rail operators whose shifts begin and end at different locations would not be considered pay for time worked. TriMet and the ATU have carried this decision forward in a total of four different collective bargaining agreements. Under FLSA Section 207(e)(2) and its implementing regulation, 29 C.F.R. § 778.320, TriMet and the

Page   2   -   DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND
                 MEMORANDUM IN SUPPORT

ATU's agreement necessarily means that the rail-allowance payments need not be included in the regular-rate calculation. This has consistently been TriMet's practice.

Plaintiffs' claims in this case are based on the argument that the Section 778.320 exclusion does not apply to the rail-allowance payments and that TriMet therefore should have included them in rail operators' regular-rate calculations. As explained below, this argument is mistaken because TriMet's exclusion of the rail-allowance payments meets both elements of the Section 778.320 test: (1) the payments compensate employees for a non-working activity, specifically, commuting; and (2) TriMet and the ATU agreed to exclude the time associated with it from the hours-worked calculation. Accordingly, the Court should grant TriMet's Motion for Summary Judgment because Plaintiffs' claims are based entirely on the lawful practice of excluding the rail-allowance payments from the regular rate.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. TriMet's Rail Operations and Plaintiffs' Employment as Rail Operators.

TriMet operates a public transportation system that serves the greater Portland Metropolitan Area. (Stip. Facts ¶ 1.) Among other modes of public transportation, TriMet operates a light-rail system called the Metropolitan Area Express ("MAX"). (*Id.*) TriMet employed Mr. Tilson as a MAX operator from about May 2001 until his retirement on or about October 19, 2018, and has employed Ms. Williams as a MAX operator from about November 2014 through the present. (*Id.* ¶ 2.)

TriMet's MAX operators, including Plaintiffs, are represented for collective bargaining purposes by the ATU. (*Id.* ¶ 4.) By statute, TriMet is obligated to bargain with the ATU about the terms and conditions of its members' employment. *See* ORS 243.666(1) ("A labor organization certified by the Employment Relations Board or recognized by the public employer

Page  3  -  DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND
                    MEMORANDUM IN SUPPORT

is the exclusive representative of the employees of a public employer for the purposes of collective bargaining with respect to employment relations."). Thus, the terms and conditions of the MAX operators' employment with TriMet are governed in relevant part by a collective bargaining agreement between TriMet and the ATU called the Working and Wage Agreement ("WWA"). (Stip. Facts ¶ 4..) The effective dates for the current WWA are December 1, 2016 through November 30, 2019. (*Id.*)

TriMet assigns MAX operators to particular shifts that are referred to as "run listings" or "runs," which differ in MAX line, geographical route, times of day, and days of the week. (*Id.* ¶ 5.) For example, one run is Monday-Thursday beginning at 5:55 a.m. at the Ruby Junction rail yard and ending at 2:06 p.m. at the Ruby Junction MAX station adjacent to it, with Fridays beginning and ending at slightly different times. (*Id.*) MAX operators are paid from the time a run is scheduled to begin until the time the run is scheduled to end, in addition to 15 minutes of pre-trip prep time for runs that begin at a rail yard and eight minutes of post-trip "clear" time for runs that end at a rail yard. (*Id.*)

All MAX runs contain a "start-shift" point and an "end-shift" point, which are always either a MAX station or a TriMet rail yard. (*Id.* ¶ 6.) TriMet requires MAX operators to be at the start-shift point to begin their runs and to complete the assigned run at the end-shift point, but does not impose any requirements regarding how the operators commute to the start-shift point or from the end-shift point. (*Id.*) MAX operators are free to commute to the start-shift point or from the end-shift point any way they desire. (*Id.*) TriMet does not pay for MAX operators' commute time, but does pay Rail Allowances as described below. (*Id.*)

///

///

Page   4   -   DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND
                MEMORANDUM IN SUPPORT

### B. The ATU and TriMet Agree That TriMet Will Provide Rail Allowances to Operators Whose Runs Begin and End at Different Locations.

Although some of the MAX runs begin and end at the same MAX station or rail yard, other runs begin and end at different locations. (*Id.* ¶ 7.) For example, one run consists of the assignment to operate a MAX train beginning from the Ruby Junction rail yard in Gresham and ending at the Gateway Transit Center between the hours of 3:48 a.m. and 11:57 a.m. Monday through Thursday. (*Id.*) Another run consists of the assignment to operate a MAX train from the Beaverton Transit Center to the Elmonica rail yard in Beaverton between the hours of 2:13 p.m. and 11:03 p.m. Monday through Thursday. (*Id.*)

Starting and ending a run at different locations presents an inconvenience to the MAX operators who are assigned to such runs. (*Id.*) Accordingly, TriMet and the ATU negotiated Article II, Section 9, Paragraph 10 of the WWA, which requires that TriMet pay so-called "rail allowances" to MAX operators whose runs begin and end at different locations. (*Id.* ¶ 8.) Article II, Section 9, Paragraph 10 of the WWA provides as follows:

**Par. 10. Rail Allowances**

a.  The purpose of the rail operation allowance represents compensation for the inconvenience associated with the rail relief. These payments shall not be considered as pay for time worked for any purpose. This applies to the unique circumstances pertaining to the District's rail system.

b.  Rail Operation Allowance:

| From:<br>To: | Elmonica: | Ruby: |
|---|---|---|
| Beaverton Transit Center | $3.50 | N/A |
| 11th Avenue Terminus | $8.00 | $15.00 |
| Gateway Transit Center | $15.00 | $8.00 |
| Rose Quarter Transit Center | $10.00 | $10.00 |
| Rose Quarter Interstate | $10.00 | $10.00 |
| Cleveland Avenue | | $ 6.00 |

Page  5  -  DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT

      c.      The District will continue the right to establish future operation allowances as needed, and will meet with the Union to negotiate any other appropriate allowance.  Special circumstances may require the District to establish unique limits on any other appropriate allowance.  These new limited situations may be established with a two-week notice.  The District will negotiate the payment for such rail allowances with the Union.

(*Id*.)  TriMet does not include rail-allowance payments when calculating rail operators' regular rates of pay for purposes of overtime payments.  (*Id*. ¶ 12.)

The three different WWAs in effect between TriMet and the ATU for the period December 1, 2003 through November 30, 2016 each contained language nearly identical to Article II, Section 9, Paragraph 10 of the current WWA.  (*Id*. ¶¶ 9-11.)  In other words, the ATU and TriMet's agreement that rail allowances are not "pay for time worked for any purpose" has been the status quo for almost 16 years.

      **C.**      **Plaintiffs Contend That TriMet Violated the FLSA and ORS 652.140 by Failing to Include Rail Allowances in Their Regular Rate of Pay.**

Plaintiffs filed a Complaint against TriMet on January 24, 2019.  (Dkt. No. 3.)  The Complaint alleges two claims against TriMet.  First, the Complaint alleges that TriMet violated the FLSA's overtime provision, 29 U.S.C. § 207, by not including Plaintiffs' rail-allowance payments in their regular-rate calculations for purposes determining their overtime entitlement.  (Pls.' Compl. ¶¶ 11, 13, 20.)  Second, the Complaint alleges a derivative claim under Oregon's final paycheck statute, ORS 652.140, on behalf of Mr. Tilson only;[1] Mr. Tilson alleges that TriMet did not pay him "[a]ll earned, but unpaid wages" upon termination because it did not include the rail-allowance payments in his FLSA overtime calculations prior to his termination.  (Pls.' Compl. ¶¶ 28-30.)

---

[1] Ms. Williams remains a TriMet employee.  (Stip. Facts ¶ 2.)

Page  6  -  DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT

TriMet answered on March 5, 2019. (Dkt. No. 13.) TriMet admitted that it does not include rail-allowance payments when calculating rail operators' regular rates of pay for purposes of overtime payments, but denied Plaintiffs' allegation that it violated the FLSA or Oregon law by doing based on the language of WWA Article II, Section 9, Paragraph 10. (Answer ¶ 11.)

D.   **The Parties Agree to Present Their Dispute About the Regular-Rate Question to the Court on the Basis of Stipulated Facts.**

After a conferral among counsel, the parties agreed that their dispute about the FLSA regular-rate issue was primarily legal and could be decided through cross motions for summary judgment on the basis of stipulated facts. Counsel made this proposal to the Court in a joint email dated March 14, 2019. On April 2, 2019, the Court accepted the parties' proposal in a telephone Rule 16 conference, then issued a scheduling order setting out the deadlines for the parties to submit the Stipulated Statement of Material Facts and their briefs on the merits. (Dkt. No. 15.) Per the scheduling order, the parties filed a Stipulated Statement of Material Facts on May 6, 2019.[2] This Motion follows.

### III.   ARGUMENT

A.   **Summary Judgment Standard.**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). No dispute exists "'where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party.'" *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 500 (9th

---

[2] On May 29, 2019, the parties filed a Corrected Stipulated Statement of Material Facts (Dkt. No. 17) to address a numbering error contained in the original pleading. Citations in this Motion are to the Corrected Stipulated Statement of Material Facts.

Page   7   -   DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND
                   MEMORANDUM IN SUPPORT

Cir. 1992) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). To defeat a motion for summary judgment, the non-moving party must "'set forth specific facts' that show a genuine issue for trial." *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)). If the evidence favoring the non-moving party "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (citations omitted).

### B. Rail Allowances Are Properly Excluded from the Regular Rate.

The FLSA generally requires that employers pay non-exempt employees 1.5 times their "regular rate" of pay (i.e., overtime) when they work more than 40 hours in a single workweek. 29 U.S.C. § 207(a)(1). With some exceptions, the FLSA also requires that employers include all compensation when calculating employees' regular rate. *See* 29 U.S.C. § 207(e) ("As used in this section the 'regular rate' at which an employee is employed shall be deemed to include all remuneration for employment paid to, or on behalf of, the employee . . . ."). One such exception concerns payments for non-working time. Thus, Section 207(e) of the FLSA goes on to provide that the regular rate need not include

> payments made for occasional periods when no work is performed due to vacation, holiday, illness, failure of the employer to provide sufficient work, or other similar cause; reasonable payments for traveling expenses, or other expenses, incurred by an employee in the furtherance of his employer's interests and properly reimbursable by the employer; and other similar payments to an employee which are not made as compensation for his hours of employment[.]

29 U.S.C. § 207(e)(2).

A longstanding Department of Labor ("DOL") regulation, 29 C.F.R. § 778.320, clarifies the meaning of the Section 207(e)(2) exclusion. The regulation provides in relevant part:

Page    8    -    DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND
                  MEMORANDUM IN SUPPORT

> [I]n the case of time spent in activity which would not be hours worked under the Act if not compensated and would not become hours worked under the Portal-to-Portal Act even if made compensable by contract, custom, or practice, the parties may reasonably agree that the time will not be counted as hours worked. Activities of this type include eating meals between working hours. Where it appears from all the pertinent facts that the parties have agreed to exclude such activities from hours worked, payments for such time will be regarded as qualifying for exclusion from the regular rate under the provisions of section 7(e)(2), as explained in §§ 778.216 to 778.224.

29 C.F.R. § 778.320(b); *see also Ballaris v. Wacker Siltronic Corp.*, 370 F.3d 901, 909 (9th Cir. 2004) (applying Section 207(e)(2) and Section 778.320(b) and concluding that paid meal periods qualified as "payments to an employee which are not made as compensation for his hours of employment" that could be excluded from the regular-rate calculation).

Despite its dense language, the test under Section 778.320(b) is quite simple: an employer need not include payments in the regular-rate calculation if: (1) the payments compensate employees for a non-working activity; and (2) the parties have agreed to exclude the time associated with it from the hours-worked calculation. Here, TriMet's rail-allowance payments satisfy both elements of the test.

### 1. The Rail-Allowance Payments Compensate Operators for the Classic Non-Working Activity: Commuting.

As explained above in Section II.B, TriMet pays rail allowances to operators whose runs begin and end at different locations because of the inconvenience associated with the resulting commute. Thus, as a matter of fact, there is a direct connection between the payment (the rail allowance) and the particular activity (commuting) the payment compensates the employee for. Because that particular activity is not working time as a matter of law, TriMet establishes the first part of the test under Section 778.320(b).

The FLSA as originally drafted does not contain an overarching definition of terms like "work" or "hours worked." *See* 29 C.F.R. § 785.6 ("By statutory definition the term 'employ'

Page 9 - DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT

includes (section 3(g)) to suffer or permit to work.'  The act, however, contains no definition of 'work.'  Section 3(o) of the Fair Labor Standards Act contains a partial definition of 'hours worked' in the form of a limited exception for clothes-changing and wash-up time.").  The meaning of these terms has instead been left to amendments to the statute, DOL regulations, and case law.

For example, the Portal-to-Portal Act amendments to the FLSA, § 4, 61 Stat. 86-87, made clear that such activities as "walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform" do not qualify as compensable activity.  29 U.S.C. § 254(a)(1); *see also Integrity Staffing Sols., Inc. v. Busk*, 135 S. Ct 513 (2014) (analyzing the scope of the Portal-To-Portal exclusion).  Thus, it is well settled that commuting is not work time under the FLSA.  29 C.F.R. § 785.35 ("An employee who travels from home before his regular workday and returns to his home at the end of the workday is engaged in ordinary home to work travel which is a normal incident of employment.  This is true whether he works at a fixed location or at different job sites.  <u>Normal travel from home to work is not worktime</u>." (emphasis added)); *Imada v. City of Hercules*, 138 F.3d 1294, 1296 (9th Cir. 1998) (same).

More specifically, Courts from around the country have applied these principles to conclude that so-called "start-end travel time" identical to that of TriMet rail operators whose runs begin and end at different locations is non-compensable commuting time.  For example, in *Estorga v. Santa Clara Valley Transportation Authority*, No. 16-cv-02668-BLF, 2019 WL 109452, at *2 (N.D. Cal. Jan. 4, 2019), the court assessed a transit authority's practice of paying bus drivers "start-end travel time" when their runs began and ended at different locations, specifically, "when drivers start[ed] their first or only run of the day or end[ed] their final or only

run of the day in the field (i.e. away from a division)." The transit authority paid the start-end travel time at the drivers' straight-time rate of pay and did not include it when determining whether the drivers worked more than 40 hours in a workweek and were thus entitled to overtime. *Id*.

The drivers sued under the FLSA, arguing that the start-end travel time qualified as hours worked. The court disagreed, finding that start-end travel time was classic "home to work travel" that was "not compensable under the FLSA." *Id*. at *8 (citing *Balestrieri v. Menlo Park Fire Prot. Dist.*, 800 F.3d 1094, 1101 (9th Cir. 2015); *Rutti v. Lojack Corp.*, 596 F.3d 1046, 1061 (9th Cir. 2010); *Imada*, 138 F.3d at 1296). Because the start-end travel time was not work time, the transit authority was under no obligation to count it toward the 40-hours-in-a-workweek calculation. *Id*. at *3.

For additional authority holding that transit operators' start-end travel time does not qualify as hours worked, *see United Transportation Union Local 1745 v. City of Albuquerque*, 178 F.3d 1109, 1120-21 (10th Cir. 1999); *Local 589, Amalgamated Transit Union v. Massachusetts Bay Transportation Authority*, 94 F. Supp. 3d 47, 51-54 (D. Mass. 2015); and *Margulies v. Tri-County Metropolitan Transportation District of Oregon*, No. 3:313-cv-00475-PK, 2015 WL 4066654 (D. Or. July 2, 2015).[3]

In short: the plain language of the relevant statute and regulations, as well as a substantial body of case law, show that start-end travel time is not "work" under the FLSA. TriMet therefore satisfies the first element of the Section 778.320(b) test.

---

[3] In *Margulies*, Judge Papak cited "the WWA's express provisions [as] strong evidence that the parties did not intend to define Start-End Travel Time as compensable work." 2015 WL 4066654, at *10. *Estorga* then cited *Margulies* for the proposition that "start-end travel time [was] non-compensable under the FLSA because it was distinct from transit operator's principal activity." 2019 WL 109452, at *8.

Page   11  -   DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND
                MEMORANDUM IN SUPPORT

### 2. TriMet and the ATU Agreed to Exclude the Time Associated with the Rail-Allowance Payments from the Hours-Worked Calculation.

TriMet satisfies the second element of the Section 778.320(b) test because it and the ATU "have agreed to exclude" the commuting time associated with the rail-relief payments from the hours-worked calculation. Indeed, TriMet and the ATU's agreement could not be more explicit on this point: per Article II, Section 9, Paragraph 10 of the WWA, the rail-allowance payments "shall not be considered as pay for time worked <u>for any purpose</u>." (Stip. Facts ¶ 8 (emphasis added).)

The WWA between TriMet and the ATU more than meets the requirement that the parties reach an "agree[ment] to exclude such activities from hours worked." 29 C.F.R. § 778.320(b). The Ninth Circuit has recognized that a valid "agree[ment] to exclude" need not be so formal as a collective bargaining agreement. Thus, in *Ballaris*, the Ninth Circuit held that the employer properly treated time spent on unpaid meal periods as non-working time where "there is no question, and the parties both agree, that the lunch period has been excluded from hours worked" as a matter of practice. 370 F.3d at 909; *see id.* ("Throughout the litigation, the parties treated the half-hour paid lunch period as non-working time, and plaintiffs offer no argument as to why we should treat it differently on appeal.").

Unlike *Ballaris*, this case presents more than just a past practice of excluding rail allowances from the regular-rate calculation; it presents express contract language agreed upon by a sophisticated employer and an equally sophisticated labor union that has been in effect since 2003, a period of time that spans four different collective bargaining agreements. (Stip. Facts ¶¶ 8-11.) As such, it is beyond dispute that the parties have reached a valid agreement under Section 778.320(b).

Page   12 -   DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND
              MEMORANDUM IN SUPPORT

## IV. CONCLUSION

For the reasons stated above, the Court should grant TriMet's Motion for Summary Judgment.

DATED: June 6, 2019

STOEL RIVES LLP

 *s/ John B. Dudrey*
VICTOR J. KISCH, OSB No. 941038
victor.kisch@stoel.com
JOHN B. DUDREY, OSB No. 083085
john.dudrey@stoel.com
Telephone: (503) 224-3380

Attorneys for Defendant

Page 13 - DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT