IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **DOUG TILSON and DIANNA WILLIAMS**, | Case No. 3:19-cv-108-SI |
| Plaintiffs, | **OPINION AND ORDER** |
| v. | |
| **TRI-COUNTY METROPOLITAN TRANSPORTATION DISTRICT OF OREGON**, | |
| Defendant. | |

Andrew Altschul and Dana L. Sullivan, BUCHANAN ANGELI ALTSCHUL & SULLIVAN, LLP, 921 SW Washington Street, Suite 516, Portland, OR 97204; Steven G. Tidrick and Joel B. Young, THE TIDRICK LAW FIRM, 1300 Clay Street, Suite 600, Oakland, CA 94612. Of Attorneys for Plaintiffs.

Victor J. Kisch and John B. Dudrey, STOEL RIVES, LLP, 760 SW Ninth Avenue, Suite 3000, Portland, OR 97205. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Doug Tilson and Dianna Williams (collectively, "Plaintiffs") assert claims for violations of the Fair Labor Standards Act ("FLSA") against Tri-County Metropolitan Transportation District of Oregon ("Tri-Met" or "Defendant"). Plaintiffs allege that Tri-Met failed to include payments made to Plaintiffs under a "rail allowance" in calculating Plaintiffs' "regular rate" for purposes of determining Plaintiffs' overtime compensation. Plaintiff Tilson also asserts a

PAGE 1 – OPINION AND ORDER

derivative claim under Oregon Revised Statutes ("ORS") § 652.140 relating to payment of wages upon termination of employment, alleging that Tri-Met did not pay him all earned and unpaid wages upon his retirement because Tri-Met excluded the rail allowance payments from his FLSA overtime calculations before his retirement. The rail allowance relates to payments made by Tri-Met to compensate rail operators during certain shifts that begin and end at different physical locations, for the inconvenience caused by having differing shift start and stop locations. Tri-Met moves for summary judgment on all claims, arguing that rail allowance payments are exempt from the calculation of regular rates under the FLSA. Plaintiffs filed a cross-motion for summary judgment. For the reasons that follow, Defendant's motion is GRANTED and Plaintiffs' motion is DENIED.[1]

## STANDARDS

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. *Clicks Billiards Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). Although "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252,

---

[1] The Court has determined that oral argument will not be helpful in resolving the pending motions. *See* LR 7-1(d)(1).

255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and quotation marks omitted).

When parties file cross-motions for summary judgment, the court "evaluate[s] each motion separately, giving the non-moving party in each instance the benefit of all reasonable inferences." *A.C.L.U. of Nev. v. City of Las Vegas*, 466 F.3d 784, 790-91 (9th Cir. 2006) (quotation marks and citation omitted); *see also Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 674 (9th Cir. 2010) ("Cross-motions for summary judgment are evaluated separately under [the] same standard."). In evaluating the motions, "the court must consider each party's evidence, regardless under which motion the evidence is offered." *Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 532 (9th Cir. 2011). "Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). Thereafter, the non-moving party bears the burden of designating "specific facts demonstrating the existence of genuine issues for trial." *Id.* "This burden is not a light one." *Id.* The Supreme Court directed that in such a situation, the non-moving party must do more than raise a "metaphysical doubt" about the material facts at issue. *Matsushita*, 475 U.S. at 586.

## FACTUAL BACKGROUND

The parties agree to all relevant facts. They dispute only the legal consequences of those facts. Accordingly, the parties filed their Stipulated Facts (ECF 17), from which this factual background is derived.

Tri-Met operates a light rail system called the Metropolitan Area Express ("MAX") that serves the greater Portland metropolitan area. Stip. Facts ¶ 1. Tri-Met employed Plaintiff Tilson as a MAX operator (or driver) from May 2001 until his retirement in October 2018. *Id.* ¶ 2. Tri-

Met employed Plaintiff Williams as a MAX operator from November 2014 through the present. *Id.* ¶ 2.

Tri-Met assigns MAX operators to shifts called "runs" or "run listings." *Id.* ¶ 5. All MAX runs begin at a "start-shift" point, and end at an "end-shift" point, which are always either a MAX station or a rail yard. *Id.* ¶ 6. MAX operators must be at the start-shift point at the beginning of their shift and complete the assigned run at the end-shift point. Tri-Met, however, does not impose any requirements about how a MAX operator commutes to or from the start-shift and end-shift points. *Id.* In calculating pay for a MAX operator, Tri-Met does not consider commute time as hours worked. *Id.* Tri-Met pays a MAX operator, on a non-exempt (*i.e.*, hourly) basis under Section 207 of the FLSA. *Id.* ¶ 3. Tri-Met pays a MAX operator from the time a run is scheduled to begin until the time the run is scheduled to end, plus 15 minutes of pre-trip preparation time and eight minutes of post-trip "clear" time for runs that begin or end at a rail yard. *Id.* ¶ 5. If a MAX operator works more than 40 hours in a single work week, that operator is entitled to an overtime payment calculated at one and one-half times (*i.e.*, one hundred fifty percent of) that operator's regular rate of pay. *Id.* ¶ 3.

Some MAX runs begin and end at different locations. *Id.* ¶ 7. Starting and ending a run at different locations may inconvenience a MAX operator because the operator may be required either to travel back to the start shift location to retrieve a commute vehicle or find alternative transportation home from the end-shift location. *Id.* MAX operators, including Plaintiffs, are represented for purposes of collective bargaining by the Amalgamated Transit Union, Division 757 ("ATU"). *Id.* ¶ 4. ATU and Tri-Met negotiated a rail allowance payment to compensate MAX operators for the inconvenience of having to begin and end a run at different locations. *Id.* ¶ 8.

The Wage and Working Agreement ("WWA") is the current collective bargaining agreement between ATU and Tri-Met. Article II, Section 9, Paragraph 10 of the WWA describes the purpose of the "rail operation allowance" and further provides that this allowance is not to be considered as pay for time worked for any purpose. It reads:

> The purpose of the rail operation allowance represents compensation for the inconvenience associated with the rail relief. These payments shall not be considered pay for time worked for any purpose. This applies to the unique circumstances pertaining to the District's rail system.

*Id.* The current WWA became effective on December 1, 2016 and continues through November 30, 2019. *Id.* ¶ 4. This provision was the same in previous versions of the WWA, dating back to at least December 1, 2003. ¶¶ 9-11. Tri-Met excluded these rail allowance payments from Plaintiffs' regular rate when calculating Plaintiffs' overtime compensation. Thus began the dispute that resulted in this lawsuit.

## RELEVANT REGULATORY FRAMEWORK

The FLSA exempts from the definition of "regular rate" payments made for hours understood not to be compensation for hours worked. The relevant text provides:

> (e) "Regular rate" defined
>
> As used in this section the "regular rate" at which an employee is employed shall be deemed to include all remuneration for employment paid to, or on behalf of, the employee, but shall not be deemed to include—
>
> \* \* \*
>
> (2) payments made for occasional periods when no work is performed due to vacation, holiday, illness, failure of the employer to provide sufficient work, or other similar cause; reasonable payments for traveling expenses, or other expenses, incurred by an employee in the furtherance of his employer's interests and properly reimbursable by the employer; *and other similar payments to an employee which are not made as compensation for his hours of employment*[.]

PAGE 5 – OPINION AND ORDER

29 U.S.C. § 207(e)(2) (emphasis added) ("§ 207" or "FLSA § 207 Exemption").

The U.S. Department of Labor ("DOL") has issued regulations interpreting the phrase "other similar payments." The relevant text provides:

> Since a variety of miscellaneous payments are paid by an employer to an employee under peculiar circumstances, it was not considered feasible to attempt to list them. They must, however, be "similar" in character to the payments specifically described in section 7(e)(2). It is clear that the clause was not intended to permit the exclusion from the regular rate of payments such as most bonuses or the furnishing of facilities like board and lodging which, though not directly attributable to any particular hours of work are, nevertheless, clearly understood to be compensation for services.

29 C.F.R. § 778.224(a) ("Similar Payments Regulation").

The FLSA, as part of the Portal-to-Portal Act, defines certain non-compensable "activities," except when agreed-upon to be compensable by contract or custom. The relevant text provides:

> (a) Activities not compensable
>
> Except as provided in subsection (b), no employer shall be subject to any liability or punishment under the Fair Labor Standards Act of 1938, as amended, the Walsh-Healey Act, or the Bacon-Davis Act, on account of the failure of such employer to pay an employee minimum wages, or to pay an employee overtime compensation, for or on account of any of the following activities of such employee engaged in on or after May 14, 1947—
>
> > (1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and
> >
> > (2) activities which are preliminary to or postliminary to said principal activity or activities,
>
> which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities. For purposes of this subsection, the use of an employer's vehicle for travel by an employee and activities

> performed by an employee which are incidental to the use of such vehicle for commuting shall not be considered part of the employee's principal activities if the use of such vehicle for travel is within the normal commuting area for the employer's business or establishment and the use of the employer's vehicle is subject to an agreement on the part of the employer and the employee or representative of such employee.
>
> (b) Compensability by contract or custom
>
> Notwithstanding the provisions of subsection (a) which relieve an employer from liability and punishment with respect to any activity, the employer shall not be so relieved if such activity is compensable by either—
>
>> (1) an express provision of a written or nonwritten contract in effect, at the time of such activity, between such employee, his agent, or collective-bargaining representative and his employer; or
>>
>> (2) a custom or practice in effect, at the time of such activity, at the establishment or other place where such employee is employed, covering such activity, not inconsistent with a written or nonwritten contract, in effect at the time of such activity, between such employee, his agent, or collective-bargaining representative and his employer.

29 U.S.C. § 254(a)-(b) ("§ 254").

Finally, DOL regulations provide additional guidance relating to time spent in an activity, including travel as described in § 254 and certain meal breaks, that may qualify under the exemption contained in § 207(e)(2):

> [I]n the case of time spent in an activity which would not be hours worked under the Act if not compensated and would not become hours worked under the Portal-to-Portal Act even if made compensable by contract, custom, or practice, such time will not be counted as hours worked unless agreement or established practice indicates that the parties have treated the time as hours worked. . . . Unless it appears from all the pertinent facts that the parties have treated such activities as hours worked, payments for such time will be regarded as qualifying for exclusion from the regular rate under the provisions of section 7(e)(2), as explained in §§ 778.216 through 778.224.

29 C.F.R. 778.320(b) ("Activities Regulation").

## DISCUSSION

Tri-Met argues that the rail allowance is exempt from the regular rate calculation under the FLSA § 207 Exemption as an "other similar payment[] to an employee [that is] not made as compensation for his hours of employment." 29 U.S.C. § 207(e)(2). Plaintiffs and Tri-Met disagree over the interpretation of the rail allowance provision in the WWA and how the Court should interpret whether the FLSA § 207 Exemption applies to exclude the rail allowance payments from Plaintiffs' regular rate. The parties also dispute which of the DOL-issued regulations that interpret the FLSA best apply to the question of whether to include or exclude rail allowance payments in or from the regular rate. Plaintiffs argue that the Court should analyze the pending motions under the Similar Payments Regulation. Tri-Met argues that the Court should look to the Activities Regulation. Finally, Plaintiffs' argue that Tri-Met is judicially estopped from disputing that a rail allowance payment is a bonus, and thus falls outside of the statutory exemption. Tri-Met disagrees. These arguments are addressed in turn.

### A. Legal Standards for Interpreting the FLSA

"The FLSA is construed liberally in favor of employees; exemptions 'are to be narrowly construed against the employers seeking to assert them. . . .'" *Cleveland v. City of Los Angeles*, 420 F.3d 981, 988 (9th Cir. 2005) (quoting *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960)). Employers bear the burden of establishing that they qualify for an FLSA exemption, and courts will not find an FLSA exemption applicable "except [in contexts] plainly and unmistakably within [the given exemption's] terms and spirit." *Id.* (quoting *Klem v. City of Santa Clara*, 208 F.3d 1085, 1089 (9th Cir. 2000)).

### B. Whether the FLSA § 207 Exemption Applies

Plaintiffs argue that the Court should analyze whether the FLSA § 207 Exemption applies from the perspective of the Similar Payments Regulation. This regulation requires analyzing whether claimed compensation is for "hours of employment," 29 U.S.C. § 207(e)(2), or "is a form of compensation for performing work." *Flores v. City of San Gabriel*, 824 F.3d 890, 899 (9th Cir. 2016). Plaintiffs do not argue or present evidence that the rail relief *is* compensation for performing work, but instead argue that Tri-Met fails to meet its burden of showing that the rail allowance payments plainly and unmistakably fit within the FLSA § 207 Exemption. Plaintiffs rely on *Montana Public Employee's Ass'n v. Montana Department of Transportation*, 954 P.2d 21 (Mont. 1998), which held that an employer failed to show that similar payments were exempt.

The Similar Payments Regulation specifically recognizes that employers may make various payments to their employees that are not explicitly listed within the FLSA § 207 Exemption but nonetheless should be excluded from the employees' regular rate calculation. 29 C.F.R. § 778.224(a) ("Since a variety of miscellaneous payments are paid by an employer to an employee under peculiar circumstances, it was not considered feasible to attempt to list them. They must, however, be 'similar' in character to the payments specifically described in section 7(e)(2)."). The Ninth Circuit also "interpret[s] the 'other similar payments' clause to focus on whether the character of the payment was compensation for work." *Flores v. City of San Gabriel*, 824 F.3d 890, 899 (9th Cir. 2016). The Ninth Circuit noted that "[u]nder § 778.224(a), a payment may not be excluded from the regular rate of pay pursuant to § 207(e)(2) if it is generally understood as compensation for work, even though the payment is not directly tied to specific hours worked by an employee." *Id.* at 898.

To evaluate the "character" of a rail allowance payment, or to determine whether it is "generally understood as compensation for work," *id.* at 898-99, the Court first looks to the WWA. The WWA states, in relevant part: "The purpose of the rail operation allowance represents compensation for the *inconvenience* associated with rail relief." Stip. Facts ¶ 8 (emphasis added). The WWA further provides: "These payments *shall not be considered as pay for time worked for any purpose*." *Id.* (emphasis added).

As unambiguously stated in the WWA, a rail allowance payment compensates a MAX operator for the inconvenience of starting and ending a shift at different locations. A rail allowance payment is paid solely on this basis and does "not depend on hours worked, services rendered, job performance, or other criteria that depend on the quality or quantity of the employee's work." 29 C.F.R. § 778.224(a). For example, if two MAX operators are paid at the same hourly rate, and one starts and ends her shift in the same location and the other starts and ends her shift in two different locations, they each have performed the same job services. Under Tri-Met's current compensation system, however, they rightly receive the same compensation for work performed and will each receive the same regular rate for purposes of overtime. The operator who started and ended her shift in a different location, however, will also receive pursuant to the WWA a rail allowance for any inconvenience that may have been caused by the different start-shift and end-shift locations. That operator, however, did not perform any different or greater job services, hours worked, or job performance. Thus, the rail allowance both explicitly is identified in the WWA as not being remuneration or compensation for job performance, and it also logically is not remuneration or compensation for work performed. Providing that second operator with a higher regular rate for purposes of calculating any overtime that also may be due simply because she started and ended her shift in different

PAGE 10 – OPINION AND ORDER

locations but otherwise performed the identical job as the first operator does not seem either logical or fair.

Plaintiffs, however, argue that the rail allowance is not similar in character to the types of payments listed in the FLSA § 207 Exemption and thus may not be exempted. Plaintiffs assert that the only qualifying payments must be similar to vacation, holiday, or sick time. Plaintiffs ignore, however, both the DOL regulations and the Ninth Circuit's guidance. First, the DOL has explained that there are a "variety" of "peculiar circumstances" that feasibly could not be listed. 29 C.F.R. § 778.224(a). Second, the DOL explained in the Activities Regulation that payments such as paid meal breaks qualify under the FLSA § 207 Exemption. 29 C.F.R. § 778.320(b). Third, the Ninth Circuit has explained that the important analysis is the character of the payment and whether it was generally understood to be a form of compensation for performing work. *Flores*, 824 F.3d at 898. In *Flores*, the Ninth Circuit discussed the Third Circuit's analysis of "other similar payments." The Ninth Circuit stated:

> This reading, too, ultimately focuses on whether a given payment is a form of compensation for an employee's service or, like vacation time and reimbursements, is instead a payment that would not generally be considered compensation for an employee's work. Admittedly, the Third Circuit's greater focus on a direct tie to hours worked or services provided hews more closely to the interpretation that the City urges here. We decline to adopt a similar requirement. We observe, however, because the purpose of the payments in *Minizza* was to secure the employees' ratification of a collective bargaining agreement, such payments are not compensation for work performed, and would similarly be excludable under our interpretation of § 207(e)(2).

*Id.* at 899. In *Flores*, the Ninth Circuit held that payments to ratify a collective bargaining agreement qualified under the FLSA § 207 Exemption and thus necessarily had a similar character to vacation, holiday, or sick time.

Paid meal breaks, vacation, holiday, sick time, paid time in which the employer did not have enough work for the employee, and compensation paid to incentivize employees to ratify a collective bargaining agreement are all examples that qualify for the FLSA § 207 Exemption under the statute and its regulations and case law. Their common character is that they are not compensation for work performed. Similarly, when Tri-Met pays a rail allowance payment to a MAX operator for the inconvenience of rail relief, Tri-Met is not compensating that MAX operator for work performed. Instead, Tri-Met has recognized, perhaps through the assistance of negotiating with the ATU, that a MAX operator may suffer inconvenience from having to start and end a shift at different locations. The parties, with the employees acting through the ATU, negotiated the rail allowance payment as compensation but specifically agreed to exclude those payments from the employees' time worked "for any purpose." Consequently, the rail allowance payments are one of the "miscellaneous payments [that] are paid by an employer to an employee under peculiar circumstances" that the DOL recognized would fall within the exemption.[2] 29 C.F.R. § 778.224(a). Because a rail allowance payment is not compensation for work performed and is similar in character to the other payments listed in the FLSA § 207 Exemption, Tri-Met

---

[2] Plaintiffs also argue that the Ninth Circuit in *Flores* noted that payments for inconvenience are not excluded under the FLSA § 207 Exemption, but that is not what the Ninth Circuit held. The Ninth Circuit discussed the Seventh Circuit's holding in *Reich v. Interstate Brands Corp.*, 57 F.3d 574 (7th Cir. 1995), which held that when employees are paid extra for working an inconvenient schedule, that is not exempted. *Flores*, 824 F.3d at 899. The discussion quoted by Plaintiffs is from the Seventh Circuit, which the Ninth Circuit did not specifically adopt, but noted was similar to the Ninth Circuit's interpretation. The Ninth Circuit stated: "At bottom, the Seventh Circuit's reading of the statute is not so different from our own—both look to whether the payment at issue is generally understood as compensation to the employee, not whether the payment is tied to specific hours worked by the employee." *Id.* Extra compensation for hours worked in an inconvenient schedule is still compensation for hours worked. Extra compensation for any inconvenience resulting from starting and ending a shift in different locations is not compensation for hours worked.

properly excluded rail allowance payments from Plaintiffs' regular rate calculation for overtime purposes.

Plaintiff's reliance on *Montana Public Employee's Ass'n* is similarly unpersuasive. In *Montana Public Employee's Ass'n*, a labor union sued the Montana Department of Transportation ("MDT"), alleging that MDT violated the FLSA by excluding the "District Construction Allowance" from the regular rate of pay for MDT employees. 954 P.2d at 22. Some job sites of MDT employees changed from time to time, requiring them to travel longer distances from their home to their reporting station. *Id.* In a collective bargaining agreement, MDT agreed to pay an allowance to compensate certain employees for the additional distances they must occasionally travel from their home to their new reporting station. *Id.* The collective bargaining agreement stated the allowance was intended "to accommodate special circumstances of employees . . . who must report to different reporting stations." *Id.* The court noted that the "other similar payments" exemption was not intended to cover items such as bonuses and provision of board and lodging that, "though not directly attributable to any particular hours of work are, nevertheless, clearly understood to be compensation for services." *Id.* at 26 (quoting 29 C.F.R. § 778.224(a) (1997)). The court concluded that MDT failed to show that the allowance "plainly and unmistakably" fit within an FLSA statutory exemption and thus violated the FLSA by not including the allowance in the employees' regular rate. *Id.* The court, however, provided no analysis for or explanation how the allowance was compensation was for work performed.

The Court does not find the analysis in *Montana Public Employee's Ass'n* persuasive with respect to the payments at issue being compensation for services or work performed. Moreover, the facts in that case are distinguishable. The payments in *Montana Public Employee's Ass'n* were for having to *report to* various locations, which may involve a greater

commute *to work*. The rail allowance here, on the other hand, is simply for when the location of the start-shift is different than the location of the end-shift. It does not involve the commute to work. Additionally, the WWA, unlike the collective bargaining agreement at issue in *Montana Public Employee's Ass'n*, clearly and unequivocally states that the rail allowance is to compensate for "inconvenience" from having to start and end one's shift in different locations. This is different than compensation to accommodate "special circumstances" for having to start one's shift at various locations, which is more ambiguous as to what the compensation covers. For example, it is unclear what "special circumstances" means or whether the compensation covers potential extra commute time. This ambiguity was held to be fatal under the standards for review under the FLSA. Further, MDT and the labor union did not explicitly agree to exclude the additional payments from an employee's time worked for *any purpose*—as Plaintiffs and Tri-Met agreed in the WWA. Thus, the character of the compensation and the agreement of the parties as to what the compensation was intended to cover is more clearly defined in the WWA than in the agreement at issue in *Montana Public Employee's Ass'n*.

## C. Judicial Estoppel

Plaintiffs also argue that Tri-Met is judicially estopped from arguing that the rail allowance payments are not bonuses, which do not fall within the FLSA § 207 Exemption. Plaintiffs rely heavily on the fact that Tri-Met once referred to the rail allowance payments as "bonuses" in a brief filed in a different lawsuit, *Margulies v. Tri-County Metropolitan Transportation District of Oregon*, Case No. 3:13-cv-0475-PK (D. Or. July 2, 2015) ("*Margulies* Lawsuit").

A district court has discretion whether to impose judicial estoppel. *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001). In considering whether to apply judicial estoppel, a district court may consider several questions, including:

> (1) Is the party's later position "clearly inconsistent with its earlier position?" (2) Did the party succeed in persuading a court to accept its earlier position, creating a perception that the first or second court was misled? and (3) Will the party seeking to assert an inconsistent position "derive an unfair advantage or impose an unfair detriment on the opposing party?"

*Baughman v. Walt Disney World Co.*, 685 F.3d 1131, 1133 (9th Cir. 2012) (quoting *New Hampshire*, 532 U.S. at 750-51). Further, this is not an exhaustive list of the factors that a court may consider. *New Hampshire*, 532 U.S. at 751. For the reasons that follow, the Court declines to preclude Tri-Met from arguing that the rail allowance payments are not bonuses and thus excludable from Plaintiffs' regular rate by the FLSA § 207 Exemption.

In the *Margulies* Lawsuit, bus and train operators argued that Tri-Met violated the FLSA by not counting the time that operators spent traveling between their start-shift point and end-shift point as compensable hours subject to overtime pay. *Margulies v. Tri-Cty. Metro. Transp. Dist. of Oregon*, 2015 WL 4066654, at *2-3 (D. Or. July 2, 2015). In Tri-Met's reply filed in support of its motion for summary judgment, Tri-Met stated:

> Obviously, the [rail allowance provision] does not provide for an hourly payment for pre-shift or post-shift travel time. The Rail Relief allowances contain no reference to time at all, and simply reflect bonuses provided to operators who relieve other operators at various locations. There is nothing in the text of this contractual provision that pertains to an operator's time spent travelling.

*Marguelis* Lawsuit, Case No. 3:13-cv-0475-PK, ECF 180 at 13 (filed March 23, 2015). Tri-Met does not refer to the rail allowance payment as a bonus in any other part of its reply brief.

The Court has considered the *New Hampshire* factors. First, Tri-Met's position in the *Margulies* Lawsuit is somewhat inconsistent with its position in the present case, although not "clearly" inconsistent. In *Margulies*, Tri-Met, on one occasion, loosely used the term "bonus" when referring to rail allowance payments. The arguments raised and argued by Tri-Met, however, were that:

PAGE 15 – OPINION AND ORDER

> plaintiffs' alleged types of uncompensated time do not constitute work time, because the time is considered commuting time, unpaid waiting time, or "off-duty" time under the Portal to Portal Act, FLSA regulations and caselaw, or because the time, in fact, is compensated by TriMet under the WWA as a break of one hour or less, or through a Time Slip completed by the operator in the event of a mandatory meeting or late-arriving MAX train.

*Marguelis* Lawsuit, Case No. 3:13-cv-0475-PK, ECF 180 at 11 (filed March 23, 2015). The focus of Tri-Met's argument was not that the payments were bonuses.

In the pending action, Tri-Met argues that rail allowance payments are neither bonuses nor compensation for work and thus are excludable from Plaintiffs' regular rate. Although this characterization is inconsistent with Tri-Met's single reference in a previous brief filed in a different lawsuit, considering the second and third *New Hampshire* factors, the characterization did not mislead this Court or the court in the *Margulies* Lawsuit. The court in *Marguilies* did not rest its holding on the fact that the payments were bonuses. Indeed, the court in its written decision never used the term "bonus" at all. *See* 2015 WL 4066654. The fact that Tri-Met made that single reference and is now arguing that the payments are not "bonuses" as that term of art is used in the FLSA also will not impose an unfair detriment on Plaintiffs in the present action.

Tri-Met's characterization did not bear on the ultimate issue in *Margulies* of whether the operators' start-end travel time was compensable work time under the FLSA. Tri-Met did not refer to the rail allowance payments as bonuses again in its brief, and Magistrate Judge Papak did not mention the word "bonus" in his written decision. Further, the word "bonus" is a term of art under the FLSA. Whether a payment qualifies as a bonus under the FLSA is a legal question. There was no substantive legal analysis in *Margulies* of whether a rail allowance payment should be considered as a "bonus," and Tri-Met's characterization in *Margulies* does not cause any unfair detriment to Plaintiffs in the pending action. The Court declines to use Tri-Met's single

reference to "bonus" in *Margulies* to preclude Tri-Met from arguing here that a rail allowance payment is not a bonus under the FLSA.

**D.  Summary**

Both the unambiguous text of the WWA and the Stipulated Facts show clearly and unmistakably that the rail allowance at issue in this case is an "other similar payment," as that term is used in the FLSA § 207 Exemption. Further, Tri-Met is not judicially estopped from arguing otherwise. Because the Court can resolve the parties' cross-motions for summary judgment on this basis alone, the Court declines to address Tri-Met's argument under the Activities Regulation.

## CONCLUSION

Tri-Met's motion for summary judgment (ECF 18) is GRANTED, and Plaintiffs' motion for summary judgment (ECF 22) is DENIED. This action is dismissed.

**IT IS SO ORDERED**.

DATED this 16th day of March, 2020.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge